IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 08-cv-02571-WYD-MEH

GARY EDWARD GRAHAM,

    Applicant,

v.

EL PASO COUNTY PROBATION DEPARTMENT, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

---

**ORDER OF DISMISSAL**

---

I.    INTRODUCTION:

Applicant Gary Edward Graham, currently under the supervision of the El Paso County Probation Department in Colorado Springs, Colorado, initiated this case on November 25, 2008, with the filing of his *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the Application, Mr. Graham challenges the amount of restitution he was ordered to pay in connection with El Paso County District Court Case No. 88CR531.

Mr. Graham asserts three separate claims for relief. During the Court's initial review of this habeas corpus action, Mr. Graham filed a motion for expedited disposition and stay of execution, which was denied by Senior Judge Zita L. Weinshienk on January 29, 2009. On April 3, 2009, Judge Weinshienk entered an order dismissing Claim One and Claim Three of Mr. Graham's application, and directing that Claim Two

be drawn to a district judge. The case was drawn to me.

On April 9, 2009, I directed Respondents to file an answer to the application, and an answer was filed on May 8, 2009. Pursuant to an order issued February 9, 2010, Respondents submitted the state court record of Mr. Graham's criminal cases. On March 16, 2010, Mr. Graham filed a second motion for stay of execution. For the reasons set forth herein, that motion will be denied.

I must construe the amended application and other papers filed by Mr. Graham liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, I should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110. After reviewing the entire file and the state court record, I find that an evidentiary hearing is not necessary. For the reasons stated below, Mr. Graham's remaining claim and the action will be dismissed.

II. FACTUAL AND PROCEDURAL BACKGROUND:

In 1988, Mr. Graham was charged with seven counts of theft in El Paso County District Court Case No. 88CR531. (Trial Court Record ("R."), Vol. 1, pp. 1-18). Mr. Graham subsequently pled *nolo contendre* to an amended felony indictment for three counts of theft of over $10,000 and agreed to entry of an order for payment of restitution to all of the victims of his theft, in exchange for dismissal of the original counts. (R., Vol. 1, pp. 45-51). On April 12, 1991, the trial court ordered Mr. Graham to pay restitution in the amount of $667,940.93, and that he remain under formal probation for a period of sixteen (16) years. (R., Vol. 1, pp. 66-68). At that time Mr. Graham was ordered to

make monthly restitution payments in the amount of either $35.00 or $3,500.00. (R., Vol. 1, p. 69).

On February 2, 2000, the state filed a Verified Complaint and Motion to Revoke Probation for failure to make restitution payments. (R., Vol. 1, p. 102-03). A hearing on the revocation was held on July 31, 2000, and following the hearing Mr. Graham was then ordered to pay a minimum of $300.00 per month commencing September 10, 2000. A determination of whether Mr. Graham's probation would be revoked was delayed, and the trial court set a sentencing hearing for December 18, 2000. (R., Vol. 1, p. 109). A the sentencing hearing, the trial court formally revoked probation and sentenced Mr. Graham to six and one-half years in the custody of the Department of Corrections. (Transcript "Trans." 12/18/00, p. 49).

Mr. Graham subsequently filed a Crim. P. 35(b) motion for reconsideration of his sentence, which was denied by the trial court following a hearing on April 4, 2001. (Trans., 4/4/01, pp. 35-36). Mr. Graham appealed, asserting that he had not violated probation because he had satisfied the original payment schedule of $35.00 per month, and prepaid the restitution owed as of the date the revocation complaint was filed. (R., Vol. 1, p. 181; Answer Ex. A 23-31, ECF No. 16-2). In an unpublished opinion, the Colorado Court of Appeals remanded the case, directing the trial court to make the following findings: (1) whether the court-ordered monthly restitution amount was $35.00, $3,500.00, or some other amount; (2) whether defendant had notice of and the ability to pay the amount ordered; (3) the total amount of restitution defendant had paid; and (4) if the monthly amount was $35.00, whether defendant has prepaid the restitution amount

owed at the time the probation revocation complaint was filed. (R., Vol. 1, pp. 182-87; *People v. Graham*, No. 01CA0952 (Colo. Ct. App. June 5, 2003) (*Graham I*)). On September 29, 2003, following a hearing on remand, the trial court concluded that the original monthly amount due was $3,500.00, that Mr. Graham had the ability to pay that sum, and that he had not paid that sum as ordered. The trial court revoked the existing probation order, placed him back on probation for the remainder of his sixteen-year sentence, and ordered him to pay $350.00 per month. (Trans., 9/29/03, pp. 53-58; 10/6/03, pp. 3-5).

Mr. Graham appealed the trial court's order on remand on November 21, 2003. (R., Vol. 1, pp. 197-98). While that appeal was pending, the prosecution sought modification of the conditions of probation and revocation of probation. On November 22, 2004, the trial court increased Mr. Graham's restitution payments to $850.00 per month, based on financial affidavits provided by Mr. Graham, and set the matter for further review in six months. (Trans., 11/22/04, pp. 13-14). At a hearing on June 6, 2005, the trial court found that Mr. Graham had violated the revised restitution order by failing to pay the full amount of restitution each month, and continued the matter for sentencing. (Trans., 6/6/05, p. 64). Prior to sentencing, on September 22, 2005, the Colorado Court of Appeals issued its opinion in *People v. Graham*, No. 03CA2247 (Colo. Ct. App. Sept. 22, 2005) (*Graham II*), in which it reversed the trial court and concluded that the original restitution order required Mr. Graham to pay $35.00 per month, not $3,500.00. Based on this finding, the Court of Appeals reversed the trial court's order revoking Mr. Graham's probation and ordered the trial court to determine

-4-

whether Mr. Graham had prepaid restitution as of the date the probation revocation complaint was filed. (Answer Ex. GG 12-16, ECF No. 16-2).

At a hearing following this second remand on October 11, 2005, the parties agreed that Mr. Graham had prepaid restitution as of the date the original probation complaint was filed. However, the trial court also found that Mr. Graham had failed to timely pay the $850.00 monthly restitution payments ordered on November 22, 2004, and revoked the existing probation order and reinstated the probation term for ten years. In addition, the trial court ordered Mr. Graham to acquire a $600,000 life insurance policy naming the victims as beneficiaries, and submit quarterly financial statements. (Trans., 10/11/05, pp. 25-26). Mr. Graham appealed this decision.

On January 31, 2008, the Colorado Court of Appeals issued its opinion in *People v. Graham*, No. 05CA2647 (Colo. Ct. App. Jan. 31, 2008) (*Graham III*). In *Graham III*, the Colorado Court of Appals affirmed the trial court's order and found, among other things, that the trial court had jurisdiction and authority to modify the amount of Mr. Graham's monthly restitution payment, raising it to $850.00 per month, as well as the jurisdiction and authority to later rely upon that order to revoke his probation because he failed to make those payments. The Court of Appeals further found that the trial court did make the requisite findings in its November 22, 2004 order, regarding Mr. Graham's ability to pay, and that the revocation of his probation on October 11, 2005 did not violate due process. *Graham III*, pp. 6-9, 11-15.

On April 16, 2008, Mr. Graham filed a petition for writ of certiorari, which was denied by the Colorado Supreme Court on June 16, 2008. (Answer Ex. L & M, ECF No.

16-14 & 16-15).

Mr. Graham filed the instant Application on December 29, 2008. As set forth above, the only remaining claim in this action is Mr. Graham's second claim in which he contends that the trial court violated his due process rights when it failed to conduct the requisite hearing to determine his ability to pay the restitution and found him in violation of the conditions of his probation, even though he was not aware of the conditions he was accused of violating. (Order to Dismiss in Part 4-5, April 3, 2009, ECF No. 13).

As set forth in the Court's order on initial review, Mr. Graham raised and exhausted this due process claim in connection with his appeal in *Graham II*, where he asserted in his opening brief that the trial court erred in finding he violated a condition of his probation by failing to pay $3,500.00 per month, even though he had not been notified of the condition he was accused of violating. However, as discussed above, the Colorado Court of Appeals in *Graham II*, reversed the trial court's findings on this issue and remanded the case for further findings. Therefore, this portion of Mr. Graham's due process claim is now moot.

Mr. Graham also raised a due process claim in connection with his appeal in *Graham III*. There, Mr. Graham asserted that the trial court abused its discretion in revoking, reinstating and extending his probation for failure to pay the increased monthly restitution payment of $850.00 when he had no ability to pay. This argument was rejected by the Colorado Court of Appeals in *Graham III*, and this portion of Mr. Graham's second claim will be reviewed on the merits.

III.     STANDARD OF REVIEW:

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Mr. Graham seeks to apply a rule of law that was clearly established by the Supreme Court at the time his state court convictions became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.

-8-

Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id*.

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows me to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct and Mr. Graham bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, I "owe deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id*.

IV. <u>MERITS OF THE CLAIMS</u>:

As noted above, the only claim remaining in this action is Claim Two. In that claim Mr. Graham asserts that the trial court violated his rights to fundamental fairness and due process when it revoked and reinstated his probation term for failure to pay the increased monthly restitution payment of $850.00 when he had no ability to pay. Mr. Graham contends that the trial court failed to conduct the requisite hearing to determine his ability to pay the restitution and found him in violation of the conditions of his probation, even though he was not aware of the conditions he was accused of violating. (Order to Dismiss in Part 4-5, April 3, 2009, ECF No. 13).

It was clearly established when Mr. Graham was convicted that a defendant has a right to due process in connection with a revocation proceeding. *See Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1983). However, a defendant in a revocation proceeding is not entitled to the full panoply of the rights afforded in a criminal prosecution. *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). A defendant in a revocation proceeding generally has a right to (1) receive written notice of the claimed violations; (2) disclosure of the evidence against him; (3) opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral and detached hearing; and (6) the factfinder's written statement as to evidence relied on and reasons for revocation. *Morrissey*, 408 U.S. at 489.

Here, a review of the state court transcripts reveals that the trial court held a hearing on November 22, 2004, to consider the prosecution's request for modification of

the conditions of Mr. Graham's probation.  Specifically, the prosecution sought to increase Mr. Graham's restitution payments.  (Trans., 11/22/04).  The record reflects that Mr. Graham was represented by counsel at the hearing, who asserted on his behalf that he did not have any ability to pay an amount over $350.00 per month, and that the salary reflected in the financial documents Mr. Graham submitted did not reflect income taxes to be deducted.  Upon examination of Mr. Graham's financial documents, the trial court concluded that Mr. Graham had the present ability to pay $850.00 per month, increased his monthly restitution accordingly, and set the matter for further review.  During this hearing, the trial court indicated that Mr. Graham could request an additional hearing before the next review hearing to demonstrate that he was a contractor rather than a salaried employee.  (Trans., 11/22/09, pp. 13-14).

A second a hearing on a formal petition for revocation was held on June 6, 2005.  Mr. Graham was also represented by counsel at this hearing who presented evidence on his behalf, and cross-examined the witnesses who testified on behalf of the prosecution.  At the hearing, the prosecution presented evidence that on three occasions from December 2004 to May 2005, Mr. Graham had made monthly payments short of the required $850.00 per month.  (Trans., 6/6/05, p. 12).  At the conclusion of hearing the trial court found that Mr. Graham had violated the revised restitution order by failing to pay the full amount of restitution each month, and continued the matter for sentencing.  (Trans., 6/6/05, p. 64).  At the sentencing hearing on October 11, 2005, where Mr. Graham was also represented by counsel, the trial court found that Mr. Graham had "taken jobs which pay less than jobs that [he] could have obtained," and

that he did not make sufficient effort to find additional work or better paying work.  The trial court revoked the existing probation order and reinstated the probation term for ten years, with continued monthly payments in the amount of $850.00.  In addition, the trial court ordered Mr. Graham to acquire a $600,000 life insurance policy naming the victims as beneficiaries and submit quarterly financial statements.  (Trans., 10/11/05, pp. 25-26).

Mr. Graham appealed the trial court's decision.  With respect to Mr. Graham's claim that the revocation violated his right to due process, the Colorado Court of Appeals found:

> Here, on June 6, 2005, the trial court conducted an extensive hearing during which defendant's ability to pay $850 per month was an issue.  Defendant presented evidence and cross-examined witnesses.  Hence he was not deprived of procedural due process.
>
> The evidence included defendant's bank records for the period in question, the contents of which could be interpreted as suggesting that defendant was able to make full, on-time payments of $850 per month.  Indeed, defendant's monthly gross income had increased to $4,000 by the time of the hearing.  Defendant also admitted that his payments were not always timely, or in the requisite amount.  Therefore, there was no substantive due process violation.

*Graham III*, pp. 14-15.

Based on the state court record, it is clear that Mr. Graham was aware of the subject of the revocation proceedings, that he was represented by counsel in those proceedings, and that he had the right to testify and cross-examine adverse witnesses during those proceedings.  There is nothing in the record to indicate that the

proceedings were otherwise unfair. Therefore, I find that Mr. Graham was not deprived of due process in connection with the revocation proceedings. I further find that the trial court's revocation decision was based on a reasonable factual determination of the evidence presented in the trial court proceeding, and that those proceedings did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law.

V.      CONCLUSION:

Accordingly, for the reasons set forth herein, it is hereby

ORDERED that Applicant Gary Edward Graham's *pro se* an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED** and the action is **DISMISSED WITH PREJUDICE**. It is

FURTHER ORDERED that Applicant's Motion for Stay of Execution, filed March 16, 2010, ECF No. 21, is **DENIED AS MOOT**. It is

FURTHER ORDERED that no certificate of appealability will issue because Applicant has not made a substantial showing of the denial of a constitutional right. The denial of a certificate of appealability is appropriate in this case.

Dated:  September 3, 2010

BY THE COURT:

s/ Wiley Y. Daniel  
Wiley Y. Daniel  
Chief United States District Judge.